### Richard A. Cavenaugh v. Blanche O. Cavenaugh.

1. ALIMONY—*Amount Fixed by Agreement of Parties and Made a Part of the Decree.*—Where the amount to be paid as alimony is fixed by an agreement or contract of the parties, and that agreement or contract is made a part of the decree, it becomes as binding upon the parties as any other part of the decree, and can be enforced in the same manner as though the amount had been fixed by the court upon hearing, without consent of the parties.

· 2. SAME—*Power of the Court to Enforce a Decree for Alimony.*—A court of chancery has power to enforce a decree for alimony by attachment for contempt, even after the expiration of the term at which the original decree for divorce and alimony was entered.

3. SAME—*Agreement to Take Less' than the Amount Decreed by the Court Does Not Destroy the Legal Effect of the Court's Decree.*—An agreement by a divorced wife by which she consents to a reduction of the amount of alimony allowed by the court, is not an independent contract, and does not change her rights under the original decree, except as to the amount she is to receive.

Attachment for Contempt.—Error to the City Court of Elgin; the Hon. RUSSELL P. GOODWIN, Judge presiding. Heard in this court at the October term, 1902. Affirmed in part and reversed in part. Opinion filed January 27, 1903.

JOSLYN & RAYMOND, attorneys for plaintiff in error.

RUSSELL & HAZELHURST and DAVID F. MATCHETT, attorneys for 'defendant in error.

MR. JUSTICE HIGBEE delivered the opinion of the court.

On September 9, 1896, a decree was entered by the City Court of Elgin, granting Richard A. Cavenaugh a divorce

from his wife, Blanche O. Cavenaugh, on the ground of extreme and repeated cruelty. By the decree he was awarded the care and custody of one of their two children and she the care and custody of the other. It was further decreed, by agreement of the parties, that he should pay her as alimony the sum of $40 per month on the first day of each month, until the further order of the court. The evidence shows that Richard A. Cavenaugh complied with the terms of the decree, paying the $40 per month as alimony, until May 18, 1898. On May 19, 1898, there was a meeting of the parties and Blanche O. Cavenaugh at that time signed the following agreement:

"As I am thoroughly convinced that R. A. Cavenaugh is not able to pay me more than twenty-five dollars per month as alimony, I hereby agree to accept that amount instead of the forty dollars per month allowed me by the court from this date."

Thereafter Richard A. Cavenaugh paid his former wife. $25 a month until January 1, 1901. On June 10, 1901, Mrs. Cavenaugh filed an affidavit in the case stating that by the terms of the decree of divorce above referred to, there was then due and unpaid to her from Richard A. Cavenaugh, the sum of $845, and asking that a rule be entered against him to show cause why he should not be committed to jail for his failure to comply with the provisions of the decree. On the same day the court ordered that Cavenaugh come into court by the next Monday morning, to show cause why he should not be tried for contempt of court, the time being afterward extended until July 1, 1901. On said last named date Cavenaugh appeared in court, to resist the proceedings for contempt against him, but on the hearing the court ordered that he pay to Mrs. Cavenaugh, within ten days, $150, said amount being arrived at by estimating the alimony at $25 per month from January 1, 1901, to July 1, 1901. It was further ordered that he pay to the clerk of said court the sum of $25 per month as alimony from July 1, 1901, until the further order of the court, and that in case of default in making said payments or any of them he stand com-

mitted to jail until he make the same as ordered.   To reverse this order Richard A. Cavenaugh has sued out a writ of error from this court.

(1)   It is claimed that the original order for alimony having been made by agreement, was simply a contract between the parties, and could not be enforced by contempt proceedings.   We are of opinion, however, that the original decree was binding in all respects upon the parties, notwithstanding the fact that it awarded alimony to the wife while granting the husband a decree against her for divorce. That part of the decree which referred to alimony to be paid to the wife, is recited therein to have been entered by agreement of the parties, and was therefore binding upon them.   In the case of Buck v. Buck, 60 Ill. 241, where, in a divorce suit, the question of alimony as found by the decree was fixed by the consent of parties, and one provision was that the husband should maintain and educate an adopted daughter of the parties, the following language was used in the opinion of the court :

" It sufficiently appears from the recitals in the decree, that the whole question of alimony was fixed and settled by the agreement of the parties, not only the amount of money and articles of personal property allowed to the defendant inerror, but also the provision made for the support and maintenance of their adopted daughter.   Having consented to these provisions of the decree, the plaintiff in error can have no relief against the force of his own voluntary agreement.   Whether the alimony is too high, or whether the court had any lawful authority to make provision for the maintenance of the adopted daughter without the consent of the plaintiff in error, it is not now necessary for us to express an opinion.   It was competent for the plaintiff in error to consent to such a decree, and having done so it must remain forever binding on him."

This doctrine is also supported by 1 Bishop on Marriage and Divorce, Sec. 1633, and Storey v. Storey, 125 Ill. 608. It follows that notwithstanding the amount to be paid as alimony was fixed by the agreement or contract of the parties, yet when that agreement or contract was made a part of the decree, it became as binding upon the parties as any

other part of the decree and could be enforced in the same manner as though the amount had been fixed by the court upon hearing, without consent of the parties. The fact that several years had elapsed since the decree was entered is immaterial, as it is well settled that a court of chancery has power to enforce a decree for alimony by attachment for contempt, even after the expiration of the term at which the original decree for divorce and alimony was entered. Welty v. Welty, 195 Ill. 335.

(2) In the original decree it was provided that the amount agreed upon as alimony be paid "until the further order of the court." The court therefore expressly reserved the power to change the order as to the alimony and had jurisdiction of the subject-matter. Notice was served upon plaintiff in error of the application to be made by defendant in error, for a rule upon him to show why he should not be adjudged in contempt of court, for the failure to comply with the provisions of the decree, in reference to alimony. He also appeared in person and by counsel and testified in his own behalf for the purpose of defeating the application, consequently the court also had jurisdiction of the person and could make such orders as the facts warranted, concerning the alimony already due and yet to accrue.

(3) It is contended that the agreement entered into by defendant in error on May 19, 1898, by which she consented to the payment of $25 instead of $40 per month for the alimony decreed to her by the court; must be taken as being in full satisfaction of the decree and stand in lieu thereof; and that as a consequence defendant in error could not enforce the collection of alimony by proceedings for contempt, but must depend upon a suit upon the contract. We do not consider this position tenable. We regard the agreement mentioned as merely a consent to a reduction in the amount of alimony and not as an independent contract in reference to the same. This she could enter into without changing her rights under the original decree, except as to the amount she was to receive. She had a

right to accept the lesser amount in satisfaction of the amount awarded her by the decree, and still not destroy the legal effect of the decree in that respect. The court still had jurisdiction of the subject-matter and the parties, and as it could change the amount to be paid upon proper application by one or both the parties, so also it had the full power to enforce the decree in accordance with any subsequent agreement made by the parties.

(4) Plaintiff in error further insists that proceedings for contempt should not be enforced against him for the reason that he had taken the child whose custody had been awarded to defendant in error by the original decree. That decree, however, was in full force and effect; and had plaintiff in error wished to be relieved from paying the alimony by reason of his having taken the child, he should have made an application to the court to modify the decree. "The power over the subject-matter of alimony is not exhausted by the entry of the original order, but is, under the statute, continuing, for the purpose at any time of making such alterations thereof as shall appear to the chancellor in the exercise of a judicial discretion, reasonable and proper." Cole v. Cole, 142 Ill. 19 (23).

(5) We are of opinion that there is no merit in the contention of plaintiff in error that there are two orders in this case requiring payment of alimony in the contempt proceedings. Whether plaintiff in error would be in contempt of court for failing to make future payments of alimony would depend upon circumstances and should not have been determined in advance, as was attempted to be done by the order in question here.

The decree of the court below of July 1, 1901, is affirmed in all respects except as to that portion which provides for committing plaintiff in error to jail in case he fails to pay the alimony falling due after said last mentioned date, and as to that portion it will be reversed.

Affirmed in part, reversed in part.